## MAGDALENA FUCHS, Respondent, v. ROBERT LEHMAN, Appellant.

### (181 N. W. 85.)

**Vendor and purchaser — evidence held to sustain judgment for price paid on reconveyance to vendor.**

1. In an action to recover $3,000, which sum, it is alleged, the defendant agreed to pay for the interest of the plaintiff and her husband in certain real and personal property which they transferred to him, it is *held* that the trial court did not err in refusing to order a new trial on the ground of insufficiency of the evidence to justify the verdict.

**Appeal and error — vendor and purchaser — error in excluding evidence held cured by subsequent admission; motive for retransfer held admissible in action for payments made.**

2. For reasons stated in the opinion it is *held* that certain rulings on the admission and exclusion of evidence were nonprejudicial.

**Trial — instructions must be construed as a whole.**

3. The court's instructions must be considered and construed as a whole.

**Trial — instruction that plaintiff must prove "justness" of claim held proper.**

4. Certain instructions considered, and, for reasons stated in the opinion, held to be nonprejudicial.

Opinion filed December 24, 1920.

Appeal from the District Court of Stark County, *Hanley,* J.

Defendant appeals from the judgment and from an order denying a new trial.

Affirmed.

*Simpson & Mackoff* and *B. M. Rigler,* for appellant.

The court erred in sustaining plaintiff's objection to the question put to Samuel Fuchs by the defendant as to the reason why he gave

the place back. The defendant had a right to ask this question for the purpose of laying a foundation for impeachment: 2 Elliott, § 971; State v. Hazlett, 14 N. D. 490; Taugher v. N. P. R. Co. 21 N. D. 111.

*Thos. H. Pugh* and *Otto Thress,* for respondent.

If there is in the case substantial evidence on which the jury's verdict may rest, the court will not disturb this verdict, although the evidence may be conflicting. The rule is well settled in this state. Montana Eastern R. Co. v. Lebeck, 32 N. D. 162, 155 N. W. 648; Senn v. Steffan, 37 N. D. 491, 164 N. W. 102; Richel v. Sherman, 34 N. D. 298, 158 N. W. 266.

The presiding judge saw the witnesses, heard the testimony, and is in a position to judge as to the right of the jury to believe one side or the other, and, generally, in such cases, the ruling of the lower court will not be disturbed on appeal. Hager v. Clark, 35 N. D. 591, 161 N. W. 280; Blackorby v. Ginther, 34 N. D. 248, 158 N. W. 354; Walker v. Laubscher (Iowa) 162 N. W. 780; Tarczek v. C. & M. R. Co. (Wis.) 156 N. W. 473; Branthover v. Monarch Elev. Co. (N. D.) 173 N. W. 455.

The witness cannot properly be cross-examined as to statements irrelevant or collateral to the matter in issue, either with a view to eliciting from him an admission of the variance or laying a foundation for proof thereof. 7 Enc. Ev. 80.

CHRISTIANSON, Ch. J. Plaintiff brought this action to recover $3,000, which she claims the defendant agreed to pay to her and to Sam Fuchs, her husband, in consideration of certain property which they conveyed to him. In her complaint she alleges the agreement on the part of the defendant to make such payment, and the conveyance by herself and her husband of the property for which such payment was to be made. She further avers the assignment to her by the husband of his cause of action.

The evidence shows that in May, 1919, the defendant sold to the plaintiff and Sam Fuchs, her husband, a farm consisting of two quarter sections of land, located near Richardton, in Stark county, in this state, together with certain horses, cattle, and machinery on said farm. One of the quarters was conveyed to the plaintiff, and the other to her husband. There was paid to the defendant, $3,000 in cash,—$1,000

to apply on the quarter section conveyed to the plaintiff and $2,000 to apply on the quarter section conveyed to her husband. The balance of the consideration was evidenced by twenty promissory notes, aggregating $19,500. In June, 1919, negotiations were had between the defendant and plaintiff's husband which resulted in a reconveyance by the plaintiff and her husband to the defendant of such lands, and a resale and redelivery to the defendant of the personal property. It is undisputed that plaintiff and her husband, on or about June 25, 1919, executed, acknowledged, and delivered deeds conveying such real property to the defendant; that he, on or about June 25, 1919, entered into possession of the realty, and received into his possession the personalty, and since that time has been, and now is, the owner of said real and personal property.

It also appears from the evidence, that the defendant returned to the plaintiff and her husband, the twenty promissory notes which they had executed and delivered to the defendant at the time they purchased the land and personal property from him. The sole question involved in this action is whether the defendant, as a consideration for the reconveyance to him, agreed to pay back to the plaintiff and her husband the $3,000 which he received at the time he sold and conveyed this property to them. The plaintiff's husband testified positively that this was the agreement. The defendant, on the other hand, testified with equal positiveness, that the agreement was that he would surrender to the plaintiff's husband the twenty promissory notes, and that this was the only consideration he was to pay for the reconveyance of the property. Several witnesses were called (all such witnesses being relatives of the parties to the controversy), who testified in regard to the question at issue. Sam Fuchs was in some things corroborated by his wife, the plaintiff; and in other things, by his brother, Chris. A greater number of witnesses, however, testified, in favor of the defendant's version of the transaction. The jury returned a verdict in favor of the plaintiff for $3,000 and interest from June 25, 1919. The defendand moved for a new trial on the ground of errors of law occurring at the trial, and duly excepted to; insufficiency of the evidence to justify the verdict; excessive damages appearing to have been given under the influence of passion or prejudice; and newly discovered evidence. The

motion for a new trial was denied, and the defendant appealed from the judgment and from the order denying a new trial.

The first and main contention of the appellant is that the evidence is insufficient to justify the verdict. It is argued that the evidence as adduced by the defendant was of greater probative force than that adduced by the plaintiff; that defendant's version was more reasonable than plaintiff's version, and also that defendant's version was supported by the testimony of a greater number of witnesses. This argument, however, ignores the fundamental rule that in this case all questions of fact were for the jury; and that it was for the jury to pass upon the credibility of witnesses and the weight to be given to their testimony. The jury believed the plaintiff's version of the transaction. This they had a right to do. It was for the jury to say what the truth was. They determined that plaintiff's version was the true one. The trial judge, who saw and heard the witnesses, refused to disturb the verdict. In determining whether the verdict should be set aside on the ground of insufficiency of the evidence, the trial court exercised a discretionary power, and his ruling should not be interfered with unless this court can say that he abused his discretion. We are all agreed that no abuse of discretion appears here.

The next contention of the appellant is that the trial court erred in sustaining an objection to the following question propounded to plaintiff's husband, while he was under cross-examination:

"Q. Now, on June 25th, the crops on the land were burned up, weren't they, by the hot winds?"

It is wholly unnecessary to determine whether the ruling was or was not erroneous, for the record discloses that the court subsequently changed its ruling, and permitted testimony to be offered as to the condition of the crops at the time the plaintiff and her husband made conveyance to the defendant. Hence the error, if any, in the original ruling was clearly cured.

It is next contended that the court erred in sustaining an objection to the following question propounded to the plaintiff's husband, Sam Fuchs, while he was under cross-examination:

"Q. Didn't you tell Val Brown there at that time that the reason that you gave the place back to Robert was because you thought it was too much for you to pay for it?"

This question related to a certain conversation claimed to have taken place between Sam Fuchs and Val Brown, on the latter's farm, in September, 1919. The record shows that on recross-examination defendant's counsel was permitted to go into the alleged conversation at length. Sam Fuchs was then asked if he did not, in such conversation at Val Brown's place, some time in September, 1919, tell Brown that before giving the place back to the defendant, he (Sam Fuchs) asked the defendant for the $3,000, but that defendant refused to give it back. Sam Fuchs answered that he had such conversation with and made such statement to Val Brown before the deal was made, *i. e.,* before June 25, 1919, but denied that he had any such conversation with him subsequent to that time. Val Brown was called as a witness for the defendant, and testified that Sam Fuchs was at his place in September, 1919; and that at that time and place, Sam Fuchs said to him (Brown) that before giving the place back to the defendant, he (Fuchs) asked "Robert for his $3,000 he had paid him, and that Robert refused to give it back to him." The materiality of the question to which the objection was sustained was certainly not apparent at the time it was asked. As soon as it was disclosed to the court that the statements claimed to have been made by Fuchs were material and against his and the plaintiff's interests, the court permitted the entire conversation to be shown. No restrictions were placed upon the examination of either Sam Fuchs or Val Brown, as to what was said during the conversation after the materiality thereof became apparent.

Error is also assigned upon the ruling of the court in permitting the following question to be propounded to plaintiff's father, Wald:

"Q. Did you at any time between May 19, 1919, and June 25, 1919, threaten to take Sam's wife away from him unless he gave up the land to Lehman?"

In our opinion the assignment is wholly without merit. It was the contention of the defendant—and several of his witnesses testified—that at the time the negotiations between Sam Fuchs and the defendant were had, on June 25, 1919, Sam Fuchs said that he would lose his wife unless he gave up the land; that his father-in-law threatened to and would take his (Fuchs's) wife away from him if he kept, and remained upon, the land. The defendant contended that this was one of the main reasons why Sam Fuchs desired to turn the property back

to the defendant. In these circumstances it was manifestly proper for the plaintiff to prove that the condition, or motive, asserted by the defendant, did not exist.

It is next contended that the court erred in instructing the jury thus: "The plaintiff has brought this action and the burden of proof is upon the plaintiff to show by a preponderance of the evidence the justness of her claim before she can recover. That is the law in every civil case, and that the party who maintains, who sets up and alleges the fact, the burden of proof is upon them. A party coming into a court of justice must satisfy the jury, by what is termed a fair preponderance of the evidence, as to the justness of her claim."

It is not apparent to us that the instruction is misleading even if it is considered abstractly. The term "just" may apply to law as well as ethics. In certain cases it denotes that which is right and fair according to positive law. Funk & W. New Standard Dict. Justness is defined by the Century Dictionary: 1. The quality or state of being just, equitable, or right; *conformity to truth* or justice; *lawfulness;* rightfulness; honorableness. 2. Conformity to fact or rule; correctness; exactness; accuracy. It is elementary that instructions must be considered as a whole. In this case the trial judge defined the term preponderance of evidence with much care. He also instructed the jury: "Unless the plaintiff has shown you throughout the entire case the correctness of her story to such an extent that it outweighs the proof of the defendant she cannot recover." We find no reason for believing that the defendant was prejudiced by the instruction complained of.

The contention that the verdict was excessive is clearly untenable. The plaintiff was either entitled to the verdict which was returned, or nothing at all.

No claim is made in this court that the defendant was entitled to a new trial on the ground of newly discovered evidence.

It follows from what has been said that the judgment and order must be affirmed. It is so ordered.

ROBINSON, BRONSON, and BIRDZELL, JJ., concur.

GRACE, J. (concurring specially). A consideration of the matters

presented upon this appeal leads to the conclusion that the verdict of the jury is sustained by substantial evidence; that the court did not err in any of its rulings regarding the reception or exclusion of evidence, nor in its rulings upon objections.

It is clear the damages were not excessive, nor is there anything in the record to indicate that the jury were influenced by passion or prejudice.